USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                               :

JASMINE BROWN,                 :
                               :

                      Plaintiff,   :

                               :

            - against -         :

                               :

MONTEFIORE MEDICAL CENTER, et al.,   :

                               :

                    Defendants.  :

                               :

-------------------------------------------------------X

15-CV-724 (VSB)

**OPINION & ORDER**

Appearances:

Joseph J. Ranni
Ranni Law Firm
Florida, New York
*Counsel for Plaintiff*

Jean L. Schmidt
Joshua D. Kiman
Jennifer Lynn Taiwo
Sean A Malley
Littler Mendelson, P.C.
New York, New York
*Counsel for Defendant Montefiore Medical Center*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Jasmine Brown ("Plaintiff") brings this action against Defendant Montefiore

Medical Center ("Montefiore" or "Defendant"), alleging discrimination on the basis of race and

national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e, *et seq.* Before me is Defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56. Because there are genuine disputes of material fact as to whether the

termination of Plaintiff's employment was motivated, at least in part, by her supervisor's

discriminatory animus, Defendant's motion for summary judgment is DENIED.

# I.     **Background**

In April 2007, Plaintiff began her employment as a Nursing Attendant in the Northwest 4

department of Montefiore, and she remained in that position until the termination of her

employment on December 27, 2013.  (Def.'s 56.1 ¶¶ 1, 2, 5.)[1]  Around August 2012, Yvonne

Dyer-Crewe became the Nurse Manager for Northwest 4, where she was Plaintiff's direct

supervisor until Plaintiff's termination.  (*Id.* ¶ 3.)[2]  Ms. Dyer-Crewe and Plaintiff are both black

and their national origin is Jamaican.  (*Id.* ¶¶ 4, 6.)

According to Plaintiff, Ms. Dyer-Crewe began making discriminatory remarks based on

Plaintiff's race and national origin shortly after Ms. Dyer-Crewe became Plaintiff's supervisor.

In an undated letter, Plaintiff stated that on May 8, 2013, Ms. Dyer-Crewe told Plaintiff, "[Y]ou

---

[1] "Def.'s 56.1" refers to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, filed September 28, 2018 ("Defendant's Local Rule 56.1 Statement").  (Doc. 89.)  I refer to this document because Plaintiff's Local Rule 56.1 Counterstatement of Undisputed Material Facts ("Plaintiff's 56.1 Counterstatement") did not comply with Rule 4(F) of my Individual Rules & Practices in Civil Cases, requiring an opposing party to "reproduce each entry in the moving party's Rule 56.1 Statement and set out its response directly beneath it." (*See generally* Pl.'s 56.1.)  Unless otherwise noted, a citation to Defendant's Local Rule 56.1 Statement indicates that Plaintiff admits the applicable facts set forth in the cited paragraph.  "Pl.'s 56.1" refers to Plaintiff's Local Rule 56.1 Counterstatement of Undisputed Material Facts, filed October 31, 2018.  (Doc. 95.)

I note that Plaintiff's response to Defendant's motion for summary judgment and accompanying documents have several other deficiencies.  For example, although Plaintiff makes assertions in her opposition memorandum regarding facts that she argues are undisputed, she did not include "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried" in her Local Rule 56.1 Counterstatement, as required by Local Rule 56.1(b).  (*See, e.g.,* Pl.'s Opp. 5 ("stating that "[i]t is undisputed that on both days Brown was responding to emergency calls for help, and not trying to get extra hours on her own initiative," but not citing to a Local Rule 56.1 Statement or to any admissible evidence).)  Accordingly, Defendant did not have a meaningful opportunity to either admit or deny these facts, as contemplated by Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Additionally, on at least twenty occasions in her opposition memorandum, Plaintiff improperly cites to her own Amended Complaint.  *See Belpasso v. Port Auth. of N.Y. & N.J.,* 400 F. App'x 600, 601 (2d Cir. 2010) (summary order) (a party "cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint").  "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed October 31, 2018.  (Doc. 97.)

[2] Defendant's Local Rule 56.1 Statement states that Ms. Dyer-Crewe's employment as Northwest 4's Nurse Manager began in August 2014, not August 2012, and Plaintiff admits this fact.  (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3).  This appears to be a typographical error, as all of the events at issue in this litigation occurred prior to August 2014, and Defendant's memorandum states that Ms. Dyer-Crewe's employment began in August 2012.  (*See* Def.'s Mem. 3.)  "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed September 28, 2018.  (Doc. 90.)

black women from Jamaica, all you do is run down money . . . ." (*Id.* ¶ 41.) Plaintiff delivered

that letter to Janice L. Reyes-Tutiven ("Ms. Reyes"), (*see id.*), who was a Senior Labor and

Employee Relations Manager at Montefiore, (*see* Reyes Decl. ¶ 1).[3] In a letter dated May 31,

2013, and addressed to Ms. Reyes, Plaintiff stated that Ms. Dyer-Crewe said, "[A]ll you black

people from Jamaica have big mouth[s,] and if you cannot wait take me to the union, I'm not

afraid of the union." (*Id.* ¶ 45; *see also* Malley Decl. Ex. I.)[4] Plaintiff also testified that she sent

a letter to Ms. Reyes informing her that Ms. Dyer-Crewe had referred to her as an "ugly black

woman from Jamaica." (Pl. Dep. 21:11-15.)[5]

In November 2013, Plaintiff informed one of her managers that her brother and aunt had

passed away, and she requested leave from November 28, 2013 to December 6, 2013 to visit

Jamaica for the funerals. (Def.'s 56.1 ¶¶ 53–55.) Ms. Dyer-Crewe denied Plaintiff's request for

leave on November 28, 2013. (*Id.* ¶ 55.) Plaintiff was not scheduled to work on November 30,

2013, December 1, 2013, or December 4, 2013. (*Id.* ¶ 58.) Pursuant to a collective bargaining

agreement, Plaintiff was entitled to three bereavement days per year. (*Id.* ¶¶ 19, 57.)

Accordingly, Plaintiff was granted bereavement leave on November 29, 2013 and December 2–

3, 2013. (*Id.* ¶ 58.) When attending a funeral required extensive travel, Nursing Attendants were

also permitted to take additional leave, although the parties disagree about how that leave was

characterized. (*Id.* ¶ 22; Pl.'s 56.1 ¶ 22.)

---

[3] "Reyes Decl." refers to the Declaration of Janice L. Reyes-Tutiven in Support of Defendant's Motion for Summary Judgment, filed September 28, 2018. (Doc. 91.)

[4] "Malley Decl." refers to the Declaration of Sean A. Malley in Support of Defendant's Motion for Summary Judgment, filed September 28, 2018. (Doc. 92.)

[5] "Pl. Dep." refers to the transcript of the deposition of Plaintiff Jasmine Brown, dated June 14, 2018, excerpts of which are attached to the Malley Declaration, (Malley Decl. Ex. B), and to the Ranni Declaration, (Ranni Decl. Ex. A). "Ranni Decl." refers to the Declaration of Joseph Ranni in Opposition to Defendant's Motion for Summary Judgment, filed October 31, 2018. (Doc. 96.)

Defendant asserts that, although leave granted under these circumstances is entered in Montefiore's timekeeping system simply as "Vacation," those leave days are treated as "Emergency Vacation" leave days, which are subject to different policies and practices than regular Vacation leave days. (Def.'s 56.1 ¶¶ 22–23.) Defendant did not produce a written policy distinguishing between "Vacation" and "Emergency Vacation." Plaintiff disagrees that such a distinction was made, and asserts that under circumstances, employees may use their banked personal time, subject to the same policies as normal "Vacation" leave days. (Pl.'s 56.1 ¶ 22.) Because bereavement leave is typically unplanned and requested on short notice, finding coverage for the missed shifts is more difficult, and may cause logistical burdens for managers and financial burdens for Montefiore. (Def.'s 56.1 ¶¶ 20, 26–29, 31–32.)[6]

Plaintiff returned to New York on December 4, 2013. (*Id.* ¶ 59.) On December 5, 2013, one of the days on which Plaintiff's leave was entered in Montefiore's timekeeping as "Vacation" leave, Plaintiff worked an overtime shift in Montefiore's Emergency Department from 9:00 a.m. to 11:31 p.m. (*Id.* ¶ 60.) On December 6, 2013, another day entered as "Vacation" leave, Plaintiff punched in to begin a shift in yet another department, the Critical Care Unit, at 6:50 a.m. (*Id.* ¶ 61.) At some point during that day, Ms. Dyer-Crewe learned that Plaintiff had accepted shifts in other departments during her scheduled leave, and she informed Nerissa Madhoo-Chin, the Director of Employee and Labor Relations at Montefiore of those circumstances. (*Id.* ¶¶ 7, 66.) The parties dispute whether and how Ms. Madhoo-Chin instructed

---

[6] I note that although Defendant described in detail the efforts that it typically undertakes to find coverage for employees taking bereavement leave, (*see* Def.'s 56.1 ¶¶ 7–32, 70–71), its Local Rule 56.1 Statement made no assertions concerning the efforts that it actually took to cover Plaintiff's shifts, (*see* Def.'s Mem. 5–6 (stating, without citing to any paragraph of Defendant's Local Rule 56.1 Statement, that "the staff at Northwest 4 did in fact undertake significant time and effort to find replacements to cover Plaintiff's shifts while she was away" and that "[f]illing these holes in the schedule caused by Plaintiff's absence required the department to incur significant additional costs in the form of overtime and/or payments to per diems").)

Ms. Dyer-Crewe to place Plaintiff on immediate suspension pending an investigation, (*see id.* ¶ 67, Pl.'s 56.1 ¶ 67),[7] but it is undisputed that emails reflect that, at 2:21 p.m. on December 6, 2013, Ms. Dyer-Crewe instructed Plaintiff to stop working and that Plaintiff was under immediate suspension pending further notice, (Def.'s 56.1 ¶¶ 62–63). Montefiore's time records reflect that Plaintiff punched out on the evening of December 6, 2013 at 9:00 p.m. (*Id.* ¶ 61.)

Ms. Reyes was assigned to investigate Plaintiff's alleged misconduct. (*Id.* ¶ 68.)[8] Ms. Reyes asked Ms. Dyer-Crewe and Christine Stryker, Montefiore's Director of Nursing,[9] to conduct an investigative meeting with Plaintiff and her union. (*Id.* ¶ 72.) On December 17, 2013, an investigative meeting was held, in which Plaintiff, Ms. Dyer-Crewe, Ms. Stryker, a union organizer, a union delegate, and a Nurse Manager all participated. (*Id.* ¶ 73.)[10] Ms. Dyer-Crewe wrote a summary of the investigative meeting and emailed it to Ms. Reyes. (*Id.* ¶ 74; *see also* Reyes Decl. Ex. D, at 4–5.) Based on the email summary, it appears that Ms. Dyer-Crewe, who referred to herself as "ADM" in the summary, took a leadership role in the meeting by taking notes during the meeting, detailing the acts she took during the investigation, and addressing Plaintiff directly during the meeting. (*See* Reyes Decl. Ex. D, at 5.)

---

[7] Plaintiff argues that Defendant's Local Rule 56.1 Statement relies on inadmissible hearsay to establish this point. (*See* Pl.'s 56.1 ¶ 67.)

[8] Defendant asserts in its memorandum that Ms. Madhoo-Chin assigned Ms. Reyes to investigate the matter, (*see* Def.'s Mem. 7), but neither Defendant's Local Rule 56.1 Statement nor Ms. Reyes's declaration mentions Ms. Madhoo-Chin with regard to Ms. Reyes's assignment, (*see* Def.'s 56.1 ¶ 68; Reyes Decl. ¶ 19).

[9] Plaintiff disputes that Ms. Stryker was Montefiore's Director of Nursing at the time, and asserts that Ms. Reyes testified that Linda Zieman was the Director of Nursing. (*See* Pl.'s 56.1 ¶ 72.) In support of this assertion, Plaintiff cites to Ms. Reyes's deposition transcript at page 80, but Plaintiff did not submit page 80 of the transcript as part of her opposition. (*See id.*) Accordingly, Plaintiff has failed to demonstrate a dispute as to this fact. *See* Fed. R. Civ. P. 56(e)(2).

[10] Plaintiff disputes that "the documents cited establish undisputed facts as alleged by Defendant[ ]," but cites to no evidence demonstrating a dispute, nor does she explain why the evidence cited by Defendant is inadmissible, (*see* Pl.'s 56.1 ¶ 73), so I consider this fact undisputed, *see* Fed. R. Civ. P. 56(e)(2).

As part of her investigation, Ms. Reyes relied upon Ms. Dyer-Crewe's email summary, as well as reports exported from Montefiore's timekeeping system, Plaintiff's attendance control report, Plaintiff's timecards, and other emails. (*See* Def.'s 56.1 ¶ 69.)[11] On December 20, 2013, Ms. Reyes held a follow-up meeting to review the facts with Ms. Stryker and Ms. Dyer-Crewe. (*Id.* ¶ 76.)[12] Ms. Reyes later discussed the findings of her investigation with Ms. Madhoo-Chin. (*Id.* ¶ 77.)[13] Ms. Reyes recommended that Plaintiff's employment be terminated, and Ms. Madhoo-Chin approved the termination. (*Id.* ¶¶ 77–81.)

After Ms. Madhoo-Chin approved Ms. Reyes's recommendation, Ms. Reyes directed Ms. Dyer-Crewe to draft a termination notice for Plaintiff. (*Id.* ¶ 82.) Ms. Dyer-Crewe drafted the termination notice, and submitted it to Ms. Reyes for her review. (Reyes Decl. ¶ 44.) After reviewing the termination notice, Ms. Reyes directed Ms. Dyer-Crewe to remove the issue regarding timely punching in and out using the time clock as one of the reasons for termination, but she otherwise approved it as drafted. (*See id*; *id.* Ex. F.) On December 27, 2013, Ms. Dyer-Crewe delivered the termination notice to Plaintiff. (Def.'s 56.1 ¶ 84.)

Plaintiff, through her union, exercised her right under the collective bargaining agreement to a grievance hearing, which was held on February 6, 2014, and at which she was represented by her union. (*Id.* ¶ 85.) Plaintiff, Ms. Dyer-Crewe, two representatives from Plaintiff's union,

---

[11] Plaintiff disputes this fact, based on an apparent conflict between Ms. Reyes's deposition testimony and the statement in her declaration. (*See* Pl.'s 56.1 ¶ 69.) Once again, Plaintiff did not submit the page of the transcript on which she relies as part of her opposition, (*see id.* (citing Reyes Dep. 104:17-20)), so Plaintiff has failed to demonstrate a dispute as to this fact, *see* Fed. R. Civ. P. 56(e)(2). "Reyes Dep." refers to the transcript of the deposition of Janice Reyes-Tutiven, dated June 26, 2018, excerpts of which are attached to the Malley Declaration, (Malley Decl. Ex. D), and to the Ranni Declaration, (Ranni Decl. Ex. C).

[12] Plaintiff disputes this fact because she denies "that the Reyes [D]eclaration . . . alone establishes an undisputed fact in this regard." (*See* Pl.'s 56.1 ¶ 76.) To the contrary, Defendant supports this fact by citation to a declaration that is based on the declarant's personal knowledge, (*see* Def.'s 56.1 ¶ 76), which is the type of evidence on which a party may properly rely when asserting that a fact is undisputed, *see* Fed. R. Civ. P. 56(c)(1)(a), (c)(4).

[13] Plaintiff disputes this fact for the same reason she provides in support of her dispute as to Paragraph 76, which is insufficient. *See supra* n.12.

and Montefiore's Director of Nursing were present for the hearing. (*Id.* ¶ 87.) The hearing

officer, Joseph O'Connell, issued a written disposition on February 12, 2014, upholding the

termination decision as warranted. (*Id.* ¶ 88.)

## II.    Procedural History

Plaintiff commenced this case by filing a pro se Complaint for Employment

Discrimination on January 30, 2015 ("Complaint"), alleging employment discrimination under

Title VII, the American with Disabilities Act of 1990, the Age Discrimination in Employment

Act of 1967, the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.*, and the New

York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (Doc. 2.) On March 4,

2015, then Chief Judge Loretta A. Preska, to whom this case was originally assigned, issued an

order directing Plaintiff to amend her Complaint, and notifying Plaintiff that her Complaint did

not satisfy the pleading standard under Federal Rule of Civil Procedure 8. (Doc. 4.) On April

30, 2015, Plaintiff filed the Amended Complaint, (Doc. 5), removing all claims except for her

Title VII claim, adding facts, and attaching documents. On May 26, 2015, the case was

reassigned to me.

Following court-ordered mediation, it was reported to me that the case had been settled,

and the case was closed on March 1, 2016. (Doc. 32). On May 23, 2016, I received a letter from

Plaintiff evincing apparent confusion over the status of the case, (Doc. 33), and on May 25,

2016, I received a letter in response from counsel who represented Plaintiff for the sole purpose

of mediation, reflecting a communication breakdown between counsel and Plaintiff such that the

settlement agreement was never executed, (Doc. 34). As a result, I scheduled a status conference

for July 14, 2016, (Doc. 35), and following that conference, set a briefing schedule for a motion

to dismiss from Defendant Montefiore, and a motion to dismiss from 1199SEIU United Health

Care Workers East (the "Union"), and four individual union members—James Santiago, Gladys Wrenick, Estela Vasquez, and George Gresham (collectively, the "Union Defendants"), (Doc. 36). In accordance with my instructions, Defendants filed their respective motions to dismiss on August 12, 2016, which included, attached to the Union Defendants' motion, a Local Civil Rule 12.1 notice. (Docs. 37–38; Docs. 40–44.) On March 21, 2017, I entered a Memorandum & Order dismissing Plaintiff's hostile work environment claims against Defendant Montefiore, and dismissing all claims against Ms. Dyer-Crewe, who had been named as a Defendant, and the Union Defendants.[14] (Doc. 57.)

On April 5, 2017, Defendant Montefiore filed its answer to the Amended Complaint. (Doc. 58.) On August 17, 2017, counsel entered an appearance on behalf of Plaintiff, who had been proceeding pro se. (Doc. 66.)

On September 28, 2018, Defendant Montefiore filed a motion for summary judgment as to the only remaining claim, pursuant to Federal Rule of Civil Procedure 56. (Doc. 88.) In support of the motion, Defendant submitted a Local Rule 56.1 Statement, (Doc. 89), a memorandum of law, (Doc. 90), and two declarations with exhibits, (Docs. 91–92). On October 31, 2018, Plaintiff opposed the motion by filing a memorandum of law, (Doc. 97), a Local Rule 56.1 Counterstatement, (Doc. 95), and a declaration with exhibits, (Doc. 96). On November 16, 2018, Defendant filed a reply memorandum, (Doc. 100), and an affirmation, (Doc. 101).

### III.  <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

---

[14] I converted, in part, the Union Defendants' motion to dismiss into a motion for summary judgment.

56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.*, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in

favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal

citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any

evidence in the record that could reasonably support a jury's verdict for the non-moving party,"

summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d

Cir. 2002).

IV.     **Discussion**

A.      *Discrimination Claim*

1.    **Applicable Law**

Under Title VII, it is "an unlawful employment practice for an employer . . . to

discriminate against any individual with respect to [her] compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1).  Under Title VII, discrimination claims based on race, color,

religion, and national origin are analyzed under the familiar three-step burden-shifting

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See*

*Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (religious discrimination claims

under Title VII and the NYSHRL); *Risco v. McHugh*, 868 F. Supp. 2d 75, 99–100 (S.D.N.Y.

2012) (race and color discrimination claims under Title VII); *Crawford-Bey v. N.Y. &*

*Presbyterian Hosp.*, No. 08 Civ. 5454(RJS), 2011 WL 4530193, at *3 (S.D.N.Y. Sept. 30, 2011)

(race discrimination claims under Title VII and the NYSHRL); *Kumar v. N.Y.C. Sch. Constr.*

*Auth.*, No. 10 Civ. 3559(PKC)(FM), 2011 WL 5929005, at *6–7 (S.D.N.Y. Nov. 29, 2011)

(national origin discrimination claims under Title VII and the NYSHRL).  Under the *McDonnell*

*Douglas* framework, the employee bears the burden of setting forth a prima facie case of

discrimination.  *See* 411 U.S. at 802.  To state a prima facie case, a plaintiff must show (1) she

belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See id.* The "burden of establishing a *prima facie* case is *de minimis.*" *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases). To establish an inference of discrimination, a plaintiff must often rely on indirect evidence of discrimination. *See Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991) ("A victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.").

If a plaintiff successfully presents a prima facie case of discrimination, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment action. *See Abdu-Brisson*, 239 F.3d at 466, 468–69. The defendant's burden at this stage is also "light," *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998), and the employer "does not need to prove by a preponderance of the evidence that the rationale was not discriminatory, but must present a clear explanation for the action," *Pathare v. Klein*, No. 06-Civ. 2202(LTS)(DCF), 2008 WL 4210471, at *4 (S.D.N.Y. Sept. 12, 2008). This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Although the burden of production shifts, "the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997).

The burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the proffered reason is a pretext for discrimination. *See United States v. City of*

*New York*, 717 F.3d 72, 102 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008). However, a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) ("[A] plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus.").

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). "To get to the jury, 'it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *St. Mary's*, 509 U.S. at 519), *cert. denied*, 540 U.S. 811 (2003); *see also Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000) (affirming summary judgment in favor of defendant where plaintiff failed to present evidence upon which a reasonable jury could conclude that age was a "determinative factor" in adverse employment action). "Though the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' it may often be carried by reliance on the evidence comprising the prima facie case, without more." *Cronin*, 46 F.3d at 203 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

## 2. Application

Defendant does not contest the first three prongs of the *McDonnell Douglas* prima facie framework—that Plaintiff is a member of a protected class, that she was qualified for her position, and that she suffered an adverse employment action. (*See* Def.'s Mem. 10–12.) Plaintiff identifies as black and her national origin is Jamaican, (Def's. 56.1 ¶ 6), and thus she belongs to a protected class. Plaintiff held her position for approximately six years prior to her suspension and subsequent termination, (*id.* ¶¶ 1, 66–67, 84), and Defendant does not allege that there was any change in her qualifications. Finally, Plaintiff's employment was terminated, which is an archetypal adverse employment action under Title VII. S*ee Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) ("Employment actions that [the Second Circuit has] deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (internal quotation marks omitted)). Plaintiff's suspension also qualifies as an adverse action for purposes of Title VII. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 355–56 (S.D.N.Y. 2006).

Defendant argues that Plaintiff fails to establish a prima facie case of employment discrimination because there is no evidence of discriminatory intent by the people who made the ultimate decision to terminate her employment—Ms. Reyes, Ms. Madhoo-Chin, and Mr. O'Connell. (*See* Def.'s Mem. 11–12.) According to Defendant, Plaintiff identifies Ms. Dyer-Crewe as the only person at Montefiore who harbored prejudice against her, and because Ms. Dyer-Crewe was not a final decision-maker and "never sought Plaintiff's termination or any other specific form of discipline[,]" there can be no inference of discrimination. (*See id.*) This

argument misconstrues the relevant legal standard. "The Second Circuit has concluded . . . that even when the ultimate decisionmaker has no record of discriminatory animus, a plaintiff may prove discrimination based on evidence that an 'individual shown to have [an] impermissible bias played a meaningful role in the . . . process.'" *Kenchi v. Hanesbrands Inc.*, No. 10 Civ. 1662(PKC), 2011 WL 4343418, at \*5 (S.D.N.Y. Aug. 12, 2011) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999)); *see also Bickerstaff*, 196 F.3d at 450 (noting that "the impermissible bias of a single individual at any stage of [an employment] process may taint the ultimate employment decision in violation of Title VII"); *Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 389–90 (S.D.N.Y. 2010) ("Unlawful discriminatory bias on the part of anyone meaningfully involved in the process leading to an adverse employment action suffices to support an inference of discriminatory intent.").

As an initial matter, Plaintiff sufficiently establishes discriminatory animus on the part of Ms. Dyer-Crewe through Plaintiff's testimony that Ms. Crewe referred to her as an "ugly black woman from Jamaica," (Pl. Dep. 21:11-15.), and her testimony that she delivered a letter to Ms. Reyes informing her that Ms. Dyer-Crewe told Plaintiff that "you black women from Jamaica, all you do is run down money," (Def.'s 56.1 ¶ 41), and "all you black people from Jamaica have [a] big mouth," (*id.* ¶ 45). Defendant does not attempt to rebut Plaintiff's testimony or to demonstrate that there is no issue of triable fact as to whether Ms. Dyer-Crewe made statements to Plaintiff demonstrating discriminatory animus.[15] (*See generally* Def.'s 56.1.)

---

[15] I note that, although Defendant refers to—and in fact quotes directly from—Plaintiff's letters in its Local Rule 56.1 Statement, these letters are likely inadmissible hearsay. However, Plaintiff provides admissible testimonial evidence that Ms. Dyer-Crewe made discriminatory statements, (*see* Pl. Dep. 21:11-15), and Defendant identifies no evidence in the record calling the accuracy of that testimony into question. Although I find that there are issues of fact relating to discriminatory animus such that summary judgment cannot be granted to Defendant, Plaintiff will face a difficult task establishing Ms. Dyer-Crewe's discriminatory animus at trial and proving that any animus she did harbor motivated, at least in part, the termination of Plaintiff's employment.

With regard to Ms. Dyer-Crewe's role in the process that led to the termination of Plaintiff's employment, Defendant admits that Ms. Dyer-Crewe: (1) was the first person to report Plaintiff's alleged misconduct on December 5 and 6, 2013 to Ms. Madhoo-Chin, (*id.* ¶ 65); (2) initially informed Plaintiff that she was suspended, (*id.* ¶ 61); (3) conducted the meeting with Plaintiff and her union representative, among others, to investigate the matter that led to Plaintiff's suspension, (*id.* ¶ 71); (4) prepared a summary of the meeting and provided it to Ms. Reyes, who reviewed the summary as part of her investigation, (*id.* ¶ 73); (5) participated in a follow-up meeting with Ms. Reyes to review the facts; (6) prepared the draft notice of termination; (7) delivered the final notice of termination to Plaintiff, (*id.* ¶ 84); and (8) participated in the grievance hearing at which Plaintiff's termination was upheld, (*id.* ¶¶ 85–88). For purposes of establishing a prima facie case of discrimination, this evidence is sufficient to raise an inference of discrimination because it establishes that Dyer-Crewe displayed discriminatory animus and played a meaningful role in the process that led to the adverse employment action against Plaintiff.

Defendant, on the other hand, offers no discussion of the standard applied in *Binckerstaff* and its progeny. As the movant, Defendant bears the burden of establishing that it is entitled to summary judgment, and its failure to demonstrate that there are no issues of material fact related to whether Ms. Dyer-Crewe played a "meaningful role" in the termination of Plaintiff's employment is sufficient to reject Defendant's argument that Plaintiff has not established a prima facie case of employment discrimination. In any event, even if Defendant had attempted to demonstrate that Ms. Dyer-Crewe did not play a meaningful role in the termination of Plaintiff's employment, in light of the undisputed facts noted above Defendant likely would have failed in any attempt to demonstrate that there is no genuine dispute as to whether and to what degree Ms.

Dyer-Crewe's discriminatory animus affected the decision to terminate Plaintiff's employment. *See Edrisse*, 757 F. Supp. 2d 389–90 (S.D.N.Y. 2010) (denying summary judgment when an individual with discriminatory animus filed a letter and orally described behavior that ultimately led to an adverse employment action).[16]

Defendant offers two reasons for Plaintiff's termination: (1) Plaintiff's act of working shifts during the leave she had been granted on December 5 and 6, 2013; and (2) Plaintiff's failure to punch out when she left her shift on December 6, 2013. (Def.'s Mem. 13–14.) Notwithstanding these proffered reasons, Defendant is not entitled to summary judgment, as there is sufficient evidence in the record to permit a reasonable jury to conclude that these reasons were pretext for unlawful discrimination.

Plaintiff's leave on November 29, December 2, and December 3, 2013 was entered in Montefiore's timekeeping system as "Bereavement." (Def.'s 56.1 ¶ 58.) On December 5 and 6, 2013—the days on which Defendant asserts that Plaintiff improperly accepted overtime shifts—Plaintiff's leave was entered as "Vacation," not "Bereavement" or "Emergency Vacation." (*See id.* ¶¶ 23, 28; Def.'s Mem. 5 n.2.) Reyes testified that, a person who is on vacation "can still work in another department." (*See* Reyes Dep. 110:7-11.) Although Ms. Reyes testified that taking overtime shifts in a different department during vacation may not be "appropriate," it has

---

[16] Defendant also argues that because Ms. Dyer-Crewe and Plaintiff are both black and Jamaican, Ms. Dyer-Crewe is entitled to "an inference against discrimination." (Def.'s Mem. 12 (quoting *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 319 (E.D.N.Y. 2014)).) However, in the "context of racial discrimination in the workplace," the Supreme Court has "rejected any conclusive presumption that an employer will not discriminate against members of [her] own race." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (citing *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("[I]t would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.")). Defendant's Local Rule 56.1 Statement does not attempt to demonstrate that there is no issue of triable fact as to whether Ms. Dyer-Crewe made statements to Plaintiff demonstrating discriminatory animus. (*See generally* Def.'s 56.1.)

"happened before." (*Id.* at 88:10-17.) Defendant did not submit as evidence any written policy prohibiting employees from taking overtime shifts during any type of scheduled leave, nor does Defendant identify any employee who has been subjected to discipline—let alone termination of employment—for violation of any such purported unwritten policy.

Defendant's second proffered reason, Plaintiff's failure to timely punch out on December 6, 2013, fares no better. As an initial matter, although Defendant claims that its first proffered reason, "standing alone, constitutes a terminable offense," Defendant makes no such claim regarding an isolated incident of failing to "punch out timely when [Plaintiff] left her shift on December 6, [2013]." (*See* Def.'s Mem. 14.) Moreover, this reason is subject to similar infirmities as the first reason. Ms. Dyer-Crewe testified that she had never terminated anyone's employment for untimely punches, nor was she aware of any person whose employment had been terminated for untimely punches. (*See* Dyer-Crewe Dep. 139:5-15.)[17] The only written policy Defendant identifies that was implicated by Plaintiff's untimely punch was a general policy against "[d]ishonesty, falsification of records, reports, documents or time/attendance records." (*See* Malley Decl. Ex. O.) Once again, Defendant does not identify any employee who has been subjected to discipline—let alone termination of employment—for untimely punches. In addition, although Ms. Dyer-Crewe included the untimely punches in the initial draft of Plaintiff's termination notice, Ms. Reyes specifically directed her to remove untimely punches as the reason for terminating Plaintiff's employment. (*See* Reyes Decl. Ex. F.) Defendant's anomalous application of policies against Plaintiff, when considered in combination with the triable factual issues regarding the discriminatory remarks allegedly made by Ms. Dyer-Crewe,

---

[17] "Dyer-Crewe Dep." refers to the transcript of the deposition of Yvonne Dyer-Crewe, dated June 22, 2018, excerpts of which are attached to the Malley Declaration, (Malley Decl. Ex. C), and to the Ranni Declaration, (Ranni Decl. Ex. B).

and her role in the process leading to Plaintiff's termination, supports a finding that a reasonable jury could find that Defendant's proffered reasons "were not the only reasons" for the termination of Plaintiff's employment and that Ms. Dyer-Crewe's discriminatory animus was at least one of the "motivating factors." *Holcomb*, 521 F.3d at 138 (quoting *Cronin*, 46 F.3d at 203).

Accordingly, Defendant's motion for summary judgment on Plaintiff's discriminatory termination claim is DENIED.

## B.    *Retaliation*

After I entered my March 21, 2017 Memorandum & Order, Plaintiff's only remaining claim was her discriminatory termination claim against Defendant Montefiore. (*See* Doc. 57, at 21, 24–25, 30.) In her opposition to Defendant's motion for summary judgment, Plaintiff raises, for the first time, a new claim that her termination was retaliation for the protected activity of reporting Ms. Dyer-Crewe's discriminatory statements. (Pl.'s Opp. 13–15.) Plaintiff initially brought this case pro se, but she has been represented by counsel since August 17, 2017. (*See* Docs. 66, 69.) Nonetheless, Plaintiff never sought leave to filed a second amended complaint to include a retaliation claim. Anticipating that Plaintiff may try to include a retaliation claim in her briefing, Defendant noted that the Amended Complaint did not allege such a claim. (Def.'s Mem. 20–23.)

In her opposition, Plaintiff makes no attempt to address the requirements for amending pleadings set forth in Rule 15 of the Federal Rules of Civil Procedure. Instead, she merely states that Defendant would not be prejudiced because "they've clearly understood this part of the claim all along—certainly well enough to address it proactively as summary judgment movants," and proceeds to argue the merits of her claim. (Pl.'s Opp. 13–15.) However, Rule 15 does not

permit a new claim to be added any time a plaintiff comes to unilateral determination that another party will not be prejudiced.[18] Indeed, after the time to amend as a matter of course has expired, "a party may amend its pleading *only* with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added). Plaintiff does not have Defendant's consent to now include a retaliation claim, and Plaintiff has not requested leave of the Court to amend her pleading. Accordingly, Plaintiff has not adequately pled a claim for retaliatory termination, and she will be precluded from seeking liability on this theory at trial.

## V.     Conclusion

For the foregoing reasons, Defendant Montefiore's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Document 88. Additionally, it is hereby:

ORDERED that the parties are directed to appear for a status conference on November 1, 2019 to discuss a schedule for pretrial submissions and potential trial dates.


SO ORDERED.

Dated:  September 29, 2019
　　　　 New York, New York

Vernon S. Broderick
United States District Judge

---

[18] Here, Defendant credibly argues that it would be prejudiced by the eleventh-hour addition of a retaliation claim. Defendant asserts that "had Plaintiff actually alleged retaliation, Defendant's litigation strategy would undoubtedly be different." (Def.'s Reply 10; *see also Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (noting that permitting amendment is "especially prejudicial" where "discovery [has] already been completed and [defendant has] already filed a motion for summary judgment").) "Def.'s Reply" refers to the Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment, filed November 16, 2018. (Doc. 100.)