UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
JASMINE BROWN,                                           :
                                                         :
                                   Plaintiff,            :
                                                         :        15-CV-724 (VSB)
                 - against -                             :
                                                         :        **OPINION & ORDER**
MONTEFIORE MEDICAL CENTER, et al.,                       :
                                                         :
                                   Defendants.           :
                                                         :
                                                         :
-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/17/2019

Appearances:

Joseph J. Ranni
Ranni Law Firm
Florida, New York
*Counsel for Plaintiff*

Jean L. Schmidt
Joshua D. Kiman
Jennifer Lynn Taiwo
Sean A. Malley
Littler Mendelson, P.C.
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

  Before me is Defendant Montefiore Medical Center's ("Defendant") motion for reconsideration, (Doc. 103), requesting reconsideration of my Opinion & Order denying Defendant's motion for summary judgment, (Doc. 102). Because I neither overlooked controlling decisions or data that would cause me to alter my original decision, Defendant's motion is DENIED.

I.    **Procedural History**

Plaintiff Jasmine Brown ("Plaintiff") brought this action against Defendant, alleging discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.  On September 28, 2018, Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 88.)  In support of the motion, Defendant submitted a Local Rule 56.1 Statement, (Doc. 89), a memorandum of law, (Doc. 90), and two declarations with exhibits, (Docs. 91, 92).  On October 31, 2018, Plaintiff opposed the motion by filing a memorandum of law, (Doc. 97), a Local Rule 56.1 Counterstatement, (Doc. 95), and a declaration with exhibits, (Doc. 96).  On November 16, 2018, Defendant filed a reply memorandum, (Doc. 100), and an affirmation, (Doc. 101).

On September 29, 2019, I entered my Opinion & Order denying Defendant's motion. (Doc. 102.)  I found that Plaintiff met her burden under the *McDonnell Douglas* framework to state a prima facie case of employment discrimination and also presented sufficient evidence for a reasonable jury to conclude that Defendant's proffered legitimate non-discriminatory reasons for Plaintiff's termination were pretext.  (*See generally* Doc. 102.)  On October 14, 2019, Defendant filed a motion for reconsideration supported by a memorandum of law, (Docs. 103, 104), which Plaintiff opposed on November 13, 2019, (Doc. 108).  This motion was fully briefed when Defendant filed its reply memorandum on December 3, 2019.  (Doc. 111.)

II.   **Legal Standard**

Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3 allow reconsideration or reargument of a court's order in certain limited circumstances.  "Rule 60(b) provides 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'" *Kubicek v. Westchester Cty.*, No. 08 Civ. 372(ER), 2014 WL 4898479, at *1

(S.D.N.Y. Sept. 30, 2014) (quoting *Nemaizer v. Baker*, 793 F.3d 58, 61 (2d Cir. 1986)). This necessarily means that the standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nor is a motion for reconsideration a time to "advance new facts, issues or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation omitted).

The decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)). Generally, a party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 702–03 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001)).

### III. Discussion

#### A. *Application of the Second Circuit's Vasquez Decision*

Defendant's first three arguments hinge on the application of the Cat's Paw standard of liability articulated in the Second Circuit's decision in *Vasquez v. Empress Ambulance Serv.,*

3

*Inc.*, 835 F.3d 267 (2d Cir. 2016). Defendant argues that I overlooked this decision, and was required to find that Plaintiff presented some evidence that Ms. Dyer-Crewe played a "meaningful role in the decisionmaking process," as well as evidence that Defendant's "own negligence [gave] effect to [Ms. Dyer-Crewe's discriminatory] animus." (Doc. 104, at 8 (quoting *Vasquez*, 835 F.3d at 276).) Defendant further argues that the meaning of "decisionmaking process" in this context requires "evidence of the individual's role in the employment decision in particular, rather than a more general 'process.'" (*Id.* at 10.) These arguments are improperly presented for the first time in Defendant's motion for reconsideration, and, in any case, are unpersuasive.

As noted, a party is barred from making an argument for the first time in a motion for reconsideration when it readily could have raised the argument when the underlying issue was initially briefed. *See, e.g.*, *Associated Press*, 395 F. Supp. 2d at 20. In its motion for summary judgment, Defendant made no mention of the Second Circuit's *Vasquez* decision or the theory of Cat's Paw liability discussed in *Vasquez*. (*See generally* Docs. 90, 100.) I therefore reject Defendant's first three arguments as improper as they were raised for the first time in its motion for reconsideration.

In any case, I find that the Cat's Paw theory of liability articulated in *Vasquez* does not apply to the instant case. *Vasquez* involved a Title VII retaliation claim, not a Title VII discrimination claim like the one brought here. The *Vasquez* decision itself recognizes that these two types of Title VII claims produced distinct, albeit similar, theories of liability when the ultimate decisionmaker involved in an adverse employment decision is not the same individual as the individual alleged to have a discriminatory animus:

> [P]ermitting "cat's paw" recovery in retaliation cases accords with longstanding precedent in our Court, in the employment-discrimination context, that "a Title VII

plaintiff is entitled to succeed, 'even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decisionmaking] process.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999)).

*Vasquez*, 835 F.3d at 272. The reason for drawing a distinction between Cat's Paw liability in the retaliation context and similar liability in discrimination cases is obvious. Although retaliation cases require a plaintiff to prove but-for causation, a plaintiff in a discrimination suit is only required to show that "his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). The Second Circuit recently emphasized this distinction in *Naumovski v. Norris*, 934 F.3d 200 (2d Cir. 2019), and explicitly mentioned the different standard of liability in retaliation cases:

> A Title VII plaintiff can succeed on a discrimination claim against an employer "even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decision-making] process." Even in Title VII retaliation cases (which require a higher standard of causation than disparate treatment cases), we have held that if an employee "manipulates an employer into acting as a mere conduit for his retaliatory intent," the employee's intent can be imputed to the employer under a "negligence" (*i.e.*, a "knew or should have known") standard.

*Naumovski*, 934 F.3d at 220.[1] Thus, the standard applied in my Opinion & Order denying

---

[1] A few courts in this district have applied *Vasquez* to Title VII discrimination claims. *See Rotger v. Montefiore Med. Ctr.*, 1:15-CV-7783-GHW, 2019 WL 1429556, at *7 (S.D.N.Y. Mar. 29, 2019); *Jacobson v. Capital One Fin. Corp.*, No. 16-CV-06169 (CM), 2018 WL 6817064, at *25 (S.D.N.Y. Dec. 12, 2018); *Boston v. Taconic Eastchester Mgmt. LLC*, 12 Civ. 4077 (ER), 2016 WL 5719751, at *7 (S.D.N.Y. Sept. 30, 2016). However, I do not read *Vasquez* any broader than the holding itself. *See Vasquez*, 835 F.3d at 272–73 ("Accordingly, we now hold that the 'cat's paw' theory may be used to support recovery for claims of retaliation in violation of Title VII."); *Id.* at 269 ("We hold, however, that an employee's retaliatory intent may be imputed to an employer where, as alleged here, the employer's own negligence gives effect to the employee's retaliatory animus and causes the victim to suffer an adverse employment decision."). Although portions of the *Vasquez* opinion could be construed as having application beyond retaliation claims, the opinion acknowledged that the "meaningful role in the [decisionmaking]

5

Defendant's motion for summary judgement was appropriate.[2]

Defendant's view that the meaning of "decisionmaking process" in this context requires "evidence of the individual's role in the employment decision in particular, rather than a more general 'process,'" (Doc. 104, at 10), is too narrow. As the Second Circuit stated in *Bickerstaff*, "the impermissible bias of a single individual *at any stage* of the promoting process may taint the ultimate employment decision in violation of Title VII." *Bickerstaff*, 196 F.3d at 450 (emphasis added). The Second Circuit has since reiterated its broad reading of this standard. *See Holcomb*, 521 F.3d at 143 ("The college contends that there is nothing in the record to show that Brennan or Petriccione played a role in the decision to select Holcomb for termination, and points to evidence in the record that it was Brother Liguori, rather than Brennan or Petriccione, who actually made the decision. But a Title VII plaintiff is entitled to succeed, 'even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process.'" (quoting *Bickerstaff*, 196 F.3d at 450).)

---

process," *Bickerstaff*, 196 F.3d at 450, standard applied in discrimination cases is "established Title VII caselaw in our Circuit," *id.* at 275, and "longstanding precedent in our Court," *id.* at 272. The quoted language from the Second Circuit's *Naumovsky* opinion bolsters this reading of *Vasquez*, and supports the conclusion that *Vasquez* did not abrogate the standard articulated in *Bickerstaff*.

[2] The *Bickerstaff* standard applied in my Opinion and Order denying Defendant's motion for summary judgement read as follows:

> "The Second Circuit has concluded . . . that even when the ultimate decisionmaker has no record of discriminatory animus, a plaintiff may prove discrimination based on evidence that an 'individual shown to have [an] impermissible bias played a meaningful role in the . . . process.'" *Kenchi v. Hanesbrands Inc.*, No. 10 Civ. 1662(PKC), 2011 WL 4343418, at *5 (S.D.N.Y. Aug. 12, 2011) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999)); *see also Bickerstaff*, 196 F.3d at 450 (noting that "the impermissible bias of a single individual at any stage of [an employment] process may taint the ultimate employment decision in violation of Title VII"); *Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 389–90 (S.D.N.Y. 2010) ("Unlawful discriminatory bias on the part of anyone meaningfully involved in the process leading to an adverse employment action suffices to support an inference of discriminatory intent.").

(Doc. 102, at 14.)

## B. *The Court Did Not Overlook Defendant's Proffered Legitimate Non-discriminatory Reasons for Plaintiff's Termination*

In my Opinion & Order, I observed that Defendant offered two non-discriminatory reasons "for Plaintiff's termination: (1) Plaintiff's act of working shifts during the leave she had been granted on December 5 and 6, 2013; and (2) Plaintiff's failure to punch out when she left her shift on December 6, 2013." (Doc. 102, at 16.) Defendant now argues that when denying its motion for summary judgment I "overlooked the proffered evidence of the actual reason for Plaintiff's termination, and misstated those reasons [*sic*] in [my] analysis." (Doc. 103, at 16.) Reexamining Defendant's memorandum of law in support of its motion for summary judgment, I find that Defendant is incorrect.

When articulating the alleged non-discriminatory reasons for Plaintiff's termination, Defendant's memorandum of law unambiguously stated the following:

> Plaintiff's act of working shifts elsewhere during her requested bereavement period, standing alone, constitutes a terminable offense. (56.1 Stmnt. ¶ 41.) But Plaintiff also failed to punch out timely when she left her shift on December 6, causing further expense to the department. This too constituted a violation of Montefiore policy. (Policy Number VII-I, attached to Malley Decl. as Exhibit O ("Dishonesty, including falsification of records, reports, documents or time/attendance records.")

(Doc. 90, at 20.) Contrary to Defendant's motion, these are the exact proffered reasons for Plaintiff's termination that I analyzed in my Opinion & Order. Defendant is wrong to now argue that I should have read more into its memorandum than the quoted language posits, particularly when the burden was on Defendant to proffer legitimate, non-discriminatory reasons for the adverse employment action. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468–69 (2d Cir. 2001). Such an argument is not the proper subject of a motion for reconsideration.

## IV. Conclusion

For the reasons stated above, it is hereby:

ORDERED that Defendants' motion for reconsideration is DENIED.

ORDERED that the parties are directed to appear for a status conference on January 10, 2020 at 11:00 a.m.

The Clerk of Court is respectfully directed to terminate the open motion at Document 103.

SO ORDERED.

Dated: December 17, 2019
    New York, New York

Vernon S. Broderick
United States District Judge